IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STATE FARM AND CASUALTY CO.,
an Illinois corporation,

No. 03:11-CV-834-HZ

               Plaintiff,

OPINION & ORDER

    v.

LORRICK PACIFIC, LLC, an Oregon limited
liability company; and
SPRUCE TERRACE, LP,
an Oregon limited partnership,

               Defendants.


Diane L. Polscer
Brian C. Hickman
GORDON & POLSCER, LLC
9755 SW Barnes Road, Suite 650
Portland, OR 97225

      Attorneys State Farm and Casualty Co.

Kevin S. Mapes
BALL JANIK, LLP
101 SW Main Street, Suite 1100
Portland, OR 97204

      Attorney for Spruce Terrace, LP

HERNANDEZ, District Judge:

Now before me is a motion for partial summary judgment (doc. #16) filed by State Farm Fire and Casualty Company ("State Farm").  State Farm's motion for partial summary judgment seeks a declaratory judgment that it has no duty to indemnify Lorrick Pacific, LLC ("Lorrick") pursuant to a Contractors Policy of insurance (the "Policy") issued by State Farm.[1]

For the reasons that follow, State Farm's motion for partial summary judgment is DENIED.

## BACKGROUND

Spruce Terrace, the owner of Spruce Terrace Apartments (the "Apartments"), filed a lawsuit in Marion County Circuit Court (the "Marion County Action") against a number of defendants, including Lorrick.  Spruce Terrace's third amended complaint filed in the Marion County Action ("Third Amended Complaint") alleges construction defects in the Apartments arising out of "faulty workmanship; inadequate supervision; improper coordination; improper or defective materials; or noncompliance with building codes[,] . . . industry standards, or manufacturer specifications and guidelines."  Hickman Decl., Ex. 1, pp. 1, 5-6.  The Third Amended Complaint also alleges that Lorrick was licensed and doing business as a general contractor in Oregon and was hired "to manage, coordinate, and oversee the work of subcontractors related to construction of the Apartments as well as perform miscellaneous labor on-site."  Id. at 2-3.

State Farm filed this action in the United States District Court for the District of Oregon seeking a declaratory judgment that it has no duty to indemnify Lorrick based on the allegations

---

[1] This action was filed against two defendants: Lorrick and Spruce Terrace, LP ("Spruce Terrace").  An entry of default (doc. #12) was entered against Lorrick on December 6, 2011, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure for failure to appear.

in the Third Amended Complaint.  State Farm subsequently filed this motion for partial summary

judgment seeking a declaratory judgment that pursuant to the Policy, State Farm is not required

to provide coverage for any liability arising out of Lorrick's failure to "manage, coordinate, and

oversee the work of subcontractors" as alleged in the Third Amended Complaint.  State Farm

contends it seeks clarification of its duty to indemnify Lorrick so that it may determine the

amount it should offer towards a potential settlement in the Marion County Action.

At the center of State Farm's motion for partial summary judgment is an exclusionary

provision in the Policy excepting insurance coverage of "professional services" (the

"Professional Services Exclusion").  The Professional Services Exclusion states State Farm will

not pay for:

> [B]odily injury, property damage or personal injury due to <u>rendering or failure to</u>
> <u>render any professional services</u> or treatments.  This includes but is not limited to:
>
> > a. legal, accounting or advertising services;
> >
> > b. engineering, drafting, surveying or architectural services, including
> > preparing, approving, or failing to prepare or approve maps, drawings,
> > opinions, reports, surveys, change orders, designs or specifications;
> >
> > c. supervisory or inspection services;
> >
> > d. medical, surgical, dental, x-ray, anesthetical or nursing services or
> > treatments, but this exclusion only applies to an insured who is engaged in
> > the business or occupation of providing any of these services or
> > treatments;
> >
> > e. any cosmetic, tonsorial or ear piercing services or treatments;
> >
> > f. optometry or optical or hearing aid services, including:
> >
> > > (1) prescribing, preparing, fitting, demonstrating or distributing of
> > > ophthalmic lenses and similar products; or
> > > (2) hearing aid devices; mortuary or veterinary services or
> > > treatments;

     h. chiropractic, massage, physiotherapy, chiropody or osteopathy services or treatments; and

     i. pharmaceutical services, but this exclusion does not apply to an insured who is a retail druggist or drugstore; . . . .

Schaller II Decl., Ex. A, pp. 21-23 (emphasis added).

## STANDARD

Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>E.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. <u>Celotex Corp.</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. <u>Id.</u> at 324.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248 (quotation omitted). The non-moving party must come forward with more than "the mere existence of a scintilla of evidence." <u>Id.</u> at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a

motion for summary judgment." Id.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Lastly, "in ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

## DISCUSSION

State Farm contends that the interpretation of the term "professional services" as used in the Professional Services Exclusion is controlled by the Oregon Supreme Court's interpretation of the term in Multnomah County v. Oregon Automobile Insurance Co., 256 Or. 24, 28 (1970). State Farm argues that based on the Oregon Supreme Court's decision in Multnomah County, it is not required to provide coverage for Lorrick's alleged failure to properly "manage, coordinate, and oversee the work of subcontractors" as alleged in the Third Amended Complaint.

Spruce Terrace contends State Farm's motion for partial summary judgment should be denied because (1) the Professional Services Exclusion does not exclude from coverage Lorrick's acts of managing, coordinating, and overseeing the work of subcontractors; (2) there are triable issues of fact as to whether State Farm has a duty to indemnify Lorrick; and (3) this action must be abated pending the conclusion of the Marion County Action.

For the reasons set forth below, I conclude the Professional Service Exclusion does not exclude Lorrick's actions from coverage, there is a genuine issue of material fact as to whether State Farm has a duty to indemnify Lorrick in the Marion County Action, and State Farm's action before this court should not be abated based on the arguments propounded by Spruce Terrace.

**I. Whether the Professional Service Exclusion Applies**

State Farm argues it has no duty to indemnify Lorrick in the Marion County Action because the plain language of the term "professional service" as used in the Professional Services Exclusion excludes from coverage Lorrick's managing, coordinating, and overseeing the work of subcontractors.  State Farm contends that the Oregon Supreme Court's definition of the term "professional service" in Multnomah County, 256 Or. at 28-29 establishes State Farm is not obligated to provide coverage for Lorrick's failure to manage, coordinate, and oversee the work of subcontractors.

Spruce Terrace argues the Oregon Supreme Court's interpretation of the term "professional service" in Multnomah County, 256 Or. 28-29 was specific to the facts in that case.  Spruce Terraces argues that the Oregon Supreme Court did not hold in Multnomah County, 256 Or. 28-29 that the term "professional services" could never be subject to more than one interpretation.  It also asserts the term "professional services" in this case is ambiguous and could reasonably be interpreted as not including managing, coordinating, and overseeing the work of subcontractors.

Where a district court has diversity jurisdiction, as here, the court "must follow Oregon law with respect to the interpretation of the insurance policy."  Alexander Mfg., Inc. v. Ill. Union Ins. Co., 560 F.3d 984, 986 (9th Cir. 2009).  In Oregon, the interpretation of an insurance contract is a question of law.  Hoffman Constr. Co. v. Fred S. James & Co., 313 Or. 464, 469 (1992).  "Despite ordinary rules of contract interpretation, extrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy."  Employers Ins. of Wausau v. Tektronix, Inc., 211 Or. App. 485, 504 (2007) (citations omitted).

The first rule of contract construction is to "ascertain the intention of the parties" through analysis of the terms, conditions, and definitions in the contract. Hoffman Constr. Co., 313 Or. at 469 (citation and quotation marks omitted). If the policy does not define the phrase in question, the court must consider whether the phrase has a plain meaning. Holloway v. Republic Indem. Co. of Am., 341 Or. 642, 649 (2006). Here, it is undisputed that the Policy does not define the term "professional services." Accordingly, this court must look to the plain meaning of the term "professional services." Id.

> [The court] resort[s] to various aids of interpretation to discern the parties' intended meaning. Under that interpretive framework, [the court] first consider[s] whether the phrase in question has a plain meaning, i.e., whether it is susceptible to only one plausible interpretation. If the phrase in question has a plain meaning, [the court] will apply that meaning and conduct no further analysis. If the phrase in question has more than one plausible interpretation, [the court] will proceed to the second interpretive aid. That is, [the court] examine[s] the phrase in light of 'the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole. If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company. However, . . . a term is ambiguous . . . only if two or more plausible interpretations of that term withstand scrutiny, i.e., continue[ ] to be reasonable despite [the] resort to the interpretive aids outlined above.

Holloway, 341 Or. at 650.

The insurer has the burden of proof that the loss is excluded from coverage. E.g., ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co., 349 Or. 117, 127 (2010).

Noted above, State Farm relies heavily on Multnomah County, 256 Or. at 26-27 for the proposition that the term "professional service" includes managing, coordinating, and overseeing the work of subcontractors. In Multnomah County, 256 Or. at 26-27, 29, the Oregon Supreme Court interpreted the term "professional service" in an exclusionary provision of an insurance policy as a service "arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or

7 - OPINION & ORDER

intellectual rather than physical or manual."  (Citing <u>Marx v. Hartford Accident and Indem. Co.</u>, 183 Neb. 12 (1968)).  The Oregon Supreme Court stated that "[i]n determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or fails to perform the act."  (Citing <u>Marx</u>, 183 Neb. 12).

Based on the Oregon Supreme Court's definition of the term "professional service" and the facts specific to that case, the Oregon Supreme Court held that a medical technician's failure to administer a shot of insulin to an inmate fell within the exclusion of the insurance policy excepting insurance coverage of any insured who failed to render a "professional service." <u>Multnomah County</u>, 256 Or. at 30.  The Oregon Supreme Court reasoned that "[i]f the ability to physically administer the insulin were the only consideration involved," then the "acts of [the] medical technician [would properly be considered] those of a craftsman and not of a professional." <u>Id.</u> at 28-29.  The Oregon Supreme Court, however, concluded that "something more was required than the physical ability to administer the drug, and that something more was the ability to determine whether [the inmate's] physical condition was such that an injection of insulin was required." <u>Id.</u> at 28.

I do not read the Oregon Supreme Court's decision in <u>Multnomah County</u> as holding that under the facts here, the term "professional services" in the Policy excludes from coverage managing, coordinating, and overseeing the work of subcontractors.  Nothing in <u>Multnomah County</u> demonstrates that managing, coordinating, and overseeing the work of subcontractors involves "specialized knowledge" or labor that is "predominantly mental or intellectual" akin to a medical technician's ability to determine whether a patient's condition requires the injection of a medical drug.  Accordingly, State Farm's reliance on <u>Multnomah County</u> is unavailing.

State Farm also argues that the dictionary definition of the term "professional services" supports its contention that the term includes the services of managing, coordinating, and overseeing the work of subcontractors.  Specifically, State Farm argues that the definitions of the words "supervise," "superintend," and "superintendent" as provided in Webster's Encyclopedic Unabridged Dictionary of the English Language ("Webster's Dictionary"), pp. 1427, 1429 (ed. 1989) clearly supports its proposition.

Here, the Professional Services Exclusion states that the term "professional services" includes "supervisory" services.  Schaller Decl., Ex. A, p. 22.  State Farm contends the plain meaning of the term "supervise" as defined in Webster's Dictionary means "oversee[ing] (a process, work, workers, etc.) during execution or performance; superintend; to have oversight or direction of."  State Farm's Mem. In Supp., pp. 5-6 (citing Webster's Dictionary, p. 1429).  State Farm further contends Webster's Dictionary defines "superintend" as "oversee[ing] and direct[ing] (work, processes, etc.)" and defines "superintendent" as a person who "oversees or directs some work, enterprise, establishment, organization, district, etc.; supervisor."  Id. at 6 (citing Webster's Dictionary, p. 1427).  State Farm asserts that Lorrick's owner, Richard Grass ("Grass"), even described Lorrick's role as a "superintendent" and stated Lorrick oversaw "the subs."  Grass Decl., Ex. 2, p. 224.  State Farm contends that based on the dictionary definition of the terms "supervise," "superintend," "superintendent," and Grass's own description of Lorrick's own work, the plain meaning of the term "professional services" includes managing, coordinating, and overseeing the work of subcontractors.

State Farm's argument fails.  Even if this court were to adopt the dictionary definition of the words "supervise," "superintend," and "superintendent" as State Farm would have this court do here, it would not resolve the issue of whether the term "professional services" includes

coordinating the work of subcontractors.  The dictionary definition of the words "supervise," "superintend," and "superintendent" as provided by State Farm does not mention the act of "coordinating" others.  This is problematic because State Farm argues Lorrick's actions of managing, coordinating, and overseeing the work of subcontractors are not covered under the Policy.  See Portland School Dist. No. 1J v. Great Am. Ins. Co., 241 Or. App. 161, 171 (2011) ("'different words are presumed to have different meanings' in the context of insurance contract interpretation") (citation omitted).  Having considered the Oregon Supreme Court's decision in Multnomah County and State Farm's arguments, I cannot conclude that the term "professional services" can only plausibly be interpreted as including managing, coordinating, and overseeing the work of subcontractors.  See Holloway, 341 Or. at 650 (the court "first consider[s] whether the phrase in question has a plain meaning, i.e., whether it is susceptible to only one plausible interpretation").

    Turning to the context in which the term "professional services" is used within the Policy does not resolve the issue of whether the term encompasses coordinating the work of subcontractors.  State Farm makes no argument as to whether the term "professional services" as used in the particular context of the Policy or in the broader context of the Policy as a whole supports its proposed definition.  Moreover, I conclude that when examining the term in the context of Professional Services Exclusion and in the context of the Policy as a whole, the term remains ambiguous.

    Here, the Professional Services Exclusion provides explicit examples of the types of services qualifying as "professional services."  Schaller II Decl., Ex. A, pp. 22-23.  Such examples include legal, accounting, engineering, architectural, "supervisory or inspection," medical, and veterinary services.  Schaller II Decl., Ex. A, pp. 22-23.  It is noteworthy that

although the Policy states that "supervisory" services fall under the term "professional services," it makes no mention of coordinating services, including coordinating the work of subcontractors. The absence of coordinating services is significant in this instance.  See Laird v. Allstate Ins. Co., 232 Or. App. 162, 170 (2009) (a "maxim of construction" of insurance contracts is that "different words are presumed to have different meanings").  Suffice it to say, an ordinary purchaser of insurance would most likely not read the Professional Services Exclusion as excluding from coverage the coordination of work by subcontractors.  See id. (the court "must construe the policy from the perspective of the 'ordinary purchaser of insurance'") (citation omitted).

Having examined the term "professional services" in the context of the Professional Services Exclusion and in the context of the Policy as a whole, I conclude the term "professional services" remains ambiguous.  Accordingly, I resolve the term against State Farm and construe the term as not including managing, coordinating, and overseeing the work of subcontractors.[2]

---

[2] In its reply, State Farm cites Erie Insurance Exchange v. Colony Development Corp., Nos. 02AP-1087, 02AP-1088, 2003 WL 23096010, at *10 (Ohio App. 10 Dist. 2003) and Brosnahan Builders, Inc. v. Harleysville Mutual Insurance Co., 137 F. Supp. 2d 517, 527 (D. Del. 2001) for the proposition that services provided by a general contractor qualify as "professional services." State Farm's reliance on these cases is misplaced.  State Farm provides no argument as to why these cases are applicable, especially where Oregon law governs the issues here.  In addition, the cases on which State Farm relies are distinguishable on their facts.  In Erie Insurance Exchange, Nos. 02AP-1087, 02AP-1088, 2003 WL 23096010, at *10, the court defined "professional services" as meaning "services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due."  It is axiomatic that this definition differs from the definition provided by Multnomah County, 256 Or. at 26-27 and accordingly, State Farm's reliance on Erie Insurance Exchange is unavailing.  In Brosnahan Builders, Inc., 137 F. Supp. 2d at 527, the court addressed the issue of whether the insurer had a duty to defend, not a duty to indemnify, as is the case here.  Furthermore, although the court in Brosnahan Builders, Inc., 137 F. Supp. 2d at 527 concluded that "[p]laintiffs, as general contractor . . . were directly responsible for supervising and inspecting the work of the subcontractors," nothing in Brosnahan Builders, Inc. demonstrates the issue before the court included whether the general contractor coordinated the work of subcontractors.  State Farm's reliance on Brosnahan Builders, Inc. is therefore equally unavailing.

11 - OPINION & ORDER

**II. Whether There is a Triable Issue of Fact Concerning State Farm's Duty to Indemnify**

Spruce Terrace contends State Farm is not entitled to partial summary judgment because there is a genuine issue of material fact as to whether State Farm has a duty to indemnify Lorrick. State Farm contends there is no triable issue of fact as to whether it has a duty to indemnify Lorrick because Grass admitted Lorrick was hired "to manage, coordinate and oversee the work of contractors" and because Spruce Terrace offers no evidence showing the type of work Lorrick performed.

Here, the record shows Grass admitted Lorrick was hired to manage, coordinate, and oversee the work of subcontractors. Grass Decl., Ex. 2, p. 68. As discussed above, however, I conclude the term "professional services" does not include managing, coordinating, and overseeing the work of subcontractors. Accordingly, whether or not Grass stated in his deposition that Lorrick was hired to manage, coordinate, and oversee the work of subcontractors is inapposite.

In addition, Spruce Terrace proffers evidence creating a triable issue of fact as to whether Lorrick's work in this instance involved "specialized knowledge." As noted above, the Oregon Supreme Court in <u>Multnomah County</u>, 256 Or. at 26-27 defined the term "professional service" as a service "arising out of a vocation, calling, occupation or employment involving <u>specialized knowledge</u>, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual." (Emphasis added and citation omitted). Here, Grass stated that he did not rely solely on his own knowledge when determining whether subcontractors were properly performing their jobs. <u>See</u> Grass Decl., Ex. 2, pp. 128-29. Instead, Grass stated he relied "a lot" on "all" the subcontractors' "specific knowledge" when determining whether the subcontractors were properly performing their jobs. Grass Decl., Ex. 2, pp. 128-29. Based on

the record, it is therefore possible that a jury could determine that Lorrick's work in this instance did not involve "specialized knowledge" as contemplated in Multnomah County, 256 Or. at 26-27. It is simply premature to conclude that based on the record before me State Farm has no duty to indemnify Lorrick. See Spada v. Unigard Ins. Co., 80 Fed. Appx. 27, 30 (9th Cir. 2003) (unlike the duty to defend, the duty to indemnify "arises from facts proved at trial") (citation omitted); see also N. Pac. Ins. Co. v. Wilson's Dist. Serv., Inc., 138 Or. App. 166, 170 (1995) ("[T]he duty to indemnify is independent of the duty to defend, and, even when the insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify, if the insured's conduct is covered.") (Emphasis added and internal quotations omitted).

In sum, I conclude that the term "professional services" as used in the Policy does not include managing, coordinating, and overseeing the work of subcontractors. I also conclude that Spruce Terrace has met its burden of presenting evidence creating a genuine issue of material fact as to whether Lorrick's work involved "specialized knowledge" as contemplated in Multnomah County, 256 Or. at 26-27. Accordingly, State Farm's motion for partial summary judgment is denied.

### III. Abatement

Spruce Terrace contends this court should abate this action pending the conclusion of the Marion County Action. To the extent Spruce Terrace moves this court to abate or stay this case, Spruce Terrace's motion is denied as improper. See Local Rule 7-1(b) ("Motions may not be combined with any response, reply, or other pleading."). Spruce Terrace, however, is given leave to file a proper motion.

/ / /

**CONCLUSION**

For the reasons stated above, State Farm's motion for partial summary judgment (doc.

#16) is DENIED.  Oral argument is unnecessary.

IT IS SO ORDERED.

Dated this  24th  day of   April    , 2012.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge